Donald W. BARNES, Plaintiff-Appellant,

v.

B. F. MERRITT, Jr., et al., Defendants-Appellees.

No. 28453.

United States Court of Appeals, Fifth Circuit.

June 22, 1970.

Floyd M. Buford, H. T. O'Neal, Jr., Hardy Gregory, Jr., Macon, Ga., for appellant.

Trammell F. Shi, F. Robert Raley, Macon, Ga., for appellees.

Before THORNBERRY, COLEMAN, and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge.

Appellant, Donald W. Barnes, unsuccessfully applied to the City of Macon, Georgia, for a license to operate a liquor store at 4420 Forsyth Road, in Macon. Thereafter, he brought suit for declaratory and injunctive relief under 28 U.S.C.A. § 1343(3) and 42 U.S.C.A. § 1983, alleging that the Mayor and City Council of Macon in refusing him a license had deprived him of due process and equal protection of the laws in violation of the Fourteenth Amendment.

After an order granting dismissal of the complaint was reversed, Barnes v. Merritt, 5 Cir., 1965, 376 F.2d 8, the case was remanded. Upon appropriate affidavits summary judgment was granted to the defendant on August 26, 1969. The accompanying memorandum opinion dated August 19, 1969, concluded that the license was denied "in accordance with ascertainable standards of the City of Macon which were well known to the plaintiff".

Originally Barnes filed his application with the Alcohol Control Committee in the terms specified by the city ordinance.[1] The Control Committee and the Chief of Police preliminarily act on liquor license applications before referral to the Mayor and City Council. After hearing, the application was denied. The Mayor and Council subsequently adopted the Control Committee's rejection of Barnes' application.

The sole ground for denial was that "the proposed location described in said application lies outside of the geographical limits to which the policy of this committee restricts the granting of package store licenses". The applicable geographical limits are the so-called "fire limits" or the central "downtown core" of Macon.[2]

So far as this record shows the policy confining liquor licenses to the fire limits has never been established or defined by an official municipal ordinance. The policy nevertheless has apparently been followed since 1946, when the chairman of the Police Traffic Committee, the predecessor of the Alcohol Control Committee, reported to the City Council that liquor licenses would be confined to the fire limits. Since that time the fire limits policy has had only the sanction of customary usage and uniform assent. Otherwise, the only written standards for the grant, transfer, and revocation of liquor licenses are contained in a Statement of Policy of the Alcohol Control Committee approved by the Mayor and Council on June 29, 1954.[3]

1. (a) Type of license desired (whether manufacturer, wholesaler, or retailer).
(b) Name and address of applicant.
(c) Length of time a resident of the State, County, and City.
(d) Age, sex, height and weight of applicant.
(e) Name and address of agent in charge of business.
(f) Names and addresses of real owner or owners of place of business and, if different from or additional to the applicant, all information as to such owner or owners as required of applicant.

2. From a point where Fifth Street crosses the Ocmulgee River in a northerly direction along the Ocmulgee River to Spring Street; thence along the middle of Spring Street and an extension on the center line of Spring Street at a point where it would intersect Oglethorpe Street; thence along Oglethorpe Street to Broadway; thence along Hazel Street to Fifth Street; and thence along Fifth Street to the Ocmulgee River and the point of beginning.

3. The Alcohol Control Committee recommends that the Council adopt the following statement of policy:
1. No person, firm, or corporation shall be granted the right or permit to transfer a retail liquor license to a location within 300 feet of any other retail liquor store, the distance to be measured from the center of the front door of the proposed location to the center of the front door of any existing liquor store, along

Note 3—Continued

the ordinary means of travel in any direction from said proposed location. For the purposes of definition, crossing a street at any point shall be considered an ordinary means of travel.

2. No beer and/or wine license shall be issued to any person, firm, or corporation where the beer or wine establishment is to be located adjacent to or next door to a retail liquor store. This rule shall not apply to existing locations so long as they continue to be used for the sale of beer and/or wine.

3. No license shall be issued to any person, firm, or corporation whose license has been revoked for any cause whatsoever within twelve months from the date of said revocation, nor to any person, firm, or corporation to operate at any location where the license of any operator at such location has been revoked for any cause whatsoever, for a period of twelve his criminal record, or lack of one, will be an important factor. The forfeiture as a plea of guilty in determining the of bond or collateral will be considered quired for a licensee.
in the community will be considered and matic revocation of a license is provided
6. Except in those cases where auto- by law, licenses will be revoked or sus- months following such revocation.

4. Any applicant for a new license or a renewal license must be of good character. The applicant's general reputation lishment, if other than the applicant, and any other employee in said establishment must meet the same qualifications as re- law violator will be granted a license.

5. The proposed manager of the estab- applicant's criminal record. No chronic pended in the discretion of the Committee for the violation of any City Ordinance or State or Federal Statutes other than minor traffic violations. Inasmuch as licensees are legally responsible and accountable for the proper operation of the establishments for which the licenses are granted, a violation by the licensee's agents or employees in the operation of said establishment shall be treated as a violation by the licensee. This policy shall apply whether the licensee is present at the establishment at the time of said violation. The forfeiture of bond or collateral will be considered as a plea of guilty.

7. No licensee will be permitted to operate in any new year without first having obtained a renewal license within the time prescribed by law.

8. No license shall be issued to any person who is in fact a front for any person whose license has been revoked, and all applicants for a license shall be care-

fully screened and investigated for the purpose of determining whether such person is in fact a front for any other person.

9. The license of any person who shall hereafter make any false statement on his application for a new license or a renewal license will be immediately revoked. In the portion of the application wherein the applicant is called upon to state whether or not he or the proposed manager of the establishment has ever been convicted of a crime other than minor traffic offenses, the licensee shall list not only convictions of and pleas of guilty to the violation of State and Federal laws and City Ordinances, but also the forfeiture bonds and collateral which shall be considered as a plea of guilty for the purposes of this statement of policy.

10. Whenever a given location shall become known as a trouble spot because of violations by the licensee, his agent, or employees or because of disturbances within the establishment among customers, the license to operate at such location will be suspended or revoked depending upon the gravity of the situation.

11. No license will be issued or transferred to any location without first consulting the Alderman from the Ward in which the proposed liquor store or beer or wine establishment is to be located.

12. In those cases where automatic revocation of a license is provided by law upon conviction of an offense, and a licensee shall be convicted of such an offense and shall appeal his conviction or apply for a writ of certiorari to review his conviction, his license shall be automatically suspended from the date of said conviction until the final determination of said appeal or review.

Adopted by the Alcohol Control Committee and approved by the Mayor and Council, June 29, 1954.

Amended as follows, September 6, 1955—

Paragraph 1 of the Statement of Policy shall be amended by striking the period at the end of said paragraph and inserting in lieu thereof a comma and adding the following:

"but in no event shall trespassing on private property be considered as an ordinary means of travel. Provided, however, that where the building housing any liquor store is set back from the sidewalk, the operator of said store shall provide ingress and egress to the front door of said store over a well defined walkway, the location of which shall be approved by the Alcohol Con-

Between 1954 and 1968, when the Mayor of Macon appointed a committee to study the advisability of granting licenses in outlying areas, there were less than a dozen applications for a license outside the fire limits. Additional notoriety was accorded the fire limits policy by occasional reference to it in the official minutes of the meetings of the Mayor and City Council.[4] Lastly, during a 1961–1962 annexation dispute in Macon, the local newspaper made reference to the policy on three separate days.

During this entire period of time the fire limits policy was maintained with only one exception. Four stores which held valid Bibb County liquor licenses were issued city licenses when their areas were annexed into the City. Former Mayor Merritt also swore that the geographical limitation was enlarged in 1956 or 1957 to include that part of Riverside Drive running North to Spring Street. How or by whom the change was effected is not mentioned.

Before Barnes filed his application for a liquor license in March, 1965, he and his attorneys met with the Mayor, City Attorney, and the Alcohol Control Committee to request a change in the geographical limitation on liquor licenses. At this meeting, attorneys for Barnes informed the City that they would file a suit testing the validity of the limitation unless it was changed. Subsequently, Barnes' application was denied and this suit was filed.

We must decide whether the fire limits policy of the City of Macon is sufficient as a matter of Georgia law, and, if so, whether the standards are sufficiently definite and ascertainable to meet the requirements of due process.

In his memorandum opinion granting summary judgment the District Judge stated that a formal ordinance was unnecessary. He concluded, "It is not within the province of this court to pass upon the method by which the city government adopts such policy as this is purely a legislative question not subject to the requirements of due process".

This approach to the question fuses two questions, i. e., the identity of the particular rule, whether legislative or adjudicative, and the underlying authority of the City Council under state law to enunciate the policy in the form they chose.

We first address ourselves to the relevant Georgia law governing municipal corporations, i. e., those of the City of Macon.

Where a municipal ordinance is passed with the necessary formalities and is sufficient in form there is a presumption that the ordinance is legal and the burden of proof is upon the party who asserts the contrary. Merwel Devel-

trol Committee and which shall be considered the ordinary means of travel from the sidewalk to said store."
so that said paragraph as amended shall read as follows:
1. No person, firm, or corporation shall be granted the right or permit to transfer a retail liquor license to a location within 300 feet of any other retail liquor store, the distance to be measured from the center of the front door of the proposed location to the center of the front door of any existing liquor store, along the ordinary means of travel in any direction from said proposed location. For the purposes of definition, crossing a street at any point shall be considered an ordinary means of travel, but in no event shall trespassing on private property

be considered as an ordinary means of travel. Provided, however, that where the building housing any liquor store is set back from the sidewalk, the operator of said store shall provide ingress or egress to the front door of said store over a well defined walkway, the location of which shall be approved by the Alcohol Control Committee and which shall be considered the ordinary means of travel from the sidewalk to said store.

4. The affidavits document five occasions when the policy was mentioned between August 6, 1946 and December 3, 1968. On December 3, the Mayor expressed doubt that the City's policy was enforceable and appointed a committee to draft a formal ordinance for the Council's consideration.

opers, Inc. v. City of Marietta, 100 Ga. App. 60, 109 S.E.2d 926 (1959). The method of procedure for adopting ordinances as provided in statute or charter is generally mandatory and exclusive of all other methods. Toomey v. Norwood Realty Company, 211 Ga. 814, 89 S.E.2d 265 (1955). Holding mandatory the procedural provisions of the City Charter governing legislative acts, the Georgia Supreme Court invalidated a purported street paving ordinance, Hall v. City of Macon, 147 Ga. 704, 95 S.E. 248 (1918). Even though the Mayor presided over the passage of the ordinance and tacitly approved it, his action did not conform to the requirements of § 24 of the Macon City Charter (Acts, 1914), to-wit:

"Every ordinance of the Council and every resolution passed by that body, shall, before it takes effect, be presented, certified by the clerk, to the mayor within two days after the passage thereof. If the mayor approve it, he shall sign it; if not, he shall return it with his objections and file the same with the clerk within five days, Sundays excepted, after he receives it, and the council shall at the first regular meeting thereafter, when a quorum is present, order the objections to be entered at large on the minutes, and shall at said meeting take a vote on the question, 'Shall the ordinance or resolution pass notwithstanding the objections of the mayor?' If as many as eight aldermen shall vote in the affirmative, such ordinance or resolution shall stand and become effective; otherwise, not. The ayes and nays shall in all such cases be entered on the minutes. If such ordinance or resolution shall not be returned by the mayor within five days, Sundays excepted, after he shall have received it, the same shall become effective in like manner as if he had signed it. The clerk shall endorse on each ordinance or resolution the time when presented to the mayor, and his endorsement shall be conclusive of the fact of such presentation and the time thereof. (p. 998).

This section survives as § 24 of the 1927 Macon City Charter (Acts, 1927, pp. 1303, 1304), and has not been altered by the five subsequent charters. The only change is that the coverage of § 24 has been broadened to include "every action of that body (City Council) dealing with public revenue or expenditures" as well as ordinances and resolutions.

All this brings us right back to where we were when we decided the first appeal, 376 F.2d 8.

We there cited Hornsby v. Allen, 5 Cir., 1964, 326 F.2d 605:

"If it develops that no ascertainable standards have been established by the Board of Aldermen by which an applicant can intelligently seek to qualify for a license, then the court must enjoin the denial of licenses under the prevailing system." 376 F.2d at 11.

The District Court held that the establishment of standards was a legislative function rather than judicial. This is undoubtedly correct, but the City of Macon has not seen fit to legislate in compliance with the requirements of its Charter and of Georgia law. If the City is to legislate, it must do so by lawful ordinance. It cannot, and could not, establish standards exclusively limiting the location of liquor stores to certain areas by mere custom or practice or by official declarations not grounded upon an ordinance duly adopted and accordingly binding upon the city government as well as upon the general public.

A city government has wide discretion and broad powers in the control of the liquor traffic. These are subject only to minimal demands of due process and equal protection. See Parks v. Allen [5 Cir., 1970] 426 F.2d 610, and Mayhue's Super Liquor Store, Inc. v. Meiklejohn [5 Cir., 1970] 426 F.2d 142.

It is to be hoped that Macon will adopt a valid ordinance dealing with the subject matter of this legislation, obviating any further appearance here.

The judgment of the District Court is reversed, and remanded for further proceedings consistent herewith.

Reversed and remanded.