346 F.Supp. 43 (1972)
Richard A. MISURELLI and Terrance McCue, Plaintiffs,
v.
CITY OF RACINE, a Wisconsin Municipal Corporation, Defendant.
GO-GO OF RACINE, INC., a Wisconsin Corporation, et al., Plaintiffs,
v.
CITY OF RACINE, a Wisconsin Municipal Corporation, et al., Defendants.
David H. ROBERS, Plaintiff,
v.
CITY OF RACINE, a Wisconsin Municipal Corporation, Defendant.
Civ. A. Nos. 71-C-316, 71-C-317, 71-C-335.
United States District Court, E. D. Wisconsin.
August 2, 1972.
*44 *45 Jay Schwartz and Victor C. Cairo, Racine, Wis., for plaintiffs Richard A. Misurelli and David H. Robers, et al.
No appearance for plaintiffs Go-Go of Racine, Inc.
Jack Harvey, City Atty., and Edward A. Krenzke, Deputy City Atty., Racine, Wis., for defendant City of Racine, and others.
Before FAIRCHILD, Circuit Judge, and REYNOLDS and GORDON, District Judges.

DECISION AND ORDER
REYNOLDS, District Judge.
In these § 1983 actions, the plaintiff tavern owners challenge the defendant City of Racine's denial of their applications for renewal of their Class "B" Fermented Malt Beverage and Intoxicating Liquor Licenses on the ground that they were not given a fair hearing. More specifically, they allege that the City of Racine ("Racine"), acting in accordance with state law, has violated their civil rights, both in the manner of and the basis for the denial of a renewal license in that the licenses were (1) denied without an adversary-type hearing, and (2) denied because of the nude dancing entertainment provided in the taverns. The complaint challenges Wis.Stats. §§ 176.05(1) and (8) as unconstitutional, and injunctive relief is requested. This court has jurisdiction pursuant to Title 28 U.S.C. § 1343.[1]
In accordance with Title 28 U.S.C. § 2281,[2] a three-judge court has *46 been convened. The governor and attorney general of Wisconsin were notified of the pendency of these actions, and the attorney general intervened as a defendant. The parties have stipulated to the facts and each has moved for summary judgment. We find for the plaintiffs.
Sections 176.05(1)[3] and 176.05(8)[4] of the Wisconsin Statutes, as construed by the Wisconsin Supreme Court,[5] enable Wisconsin municipalities to deny liquor license applications after providing the applicant with only a legislative-type hearing "wherein one is given notice of the hearing and a fair opportunity to state his position * * *."[6] Specifically, this hearing need not necessarily include "the right to cross examine or require testimony to be given under oath."[7]
Racine, acting upon the plaintiffs' applications for renewal[8] of their liquor licenses, held a public hearing before the city council licensing committee, in which all citizens were allowed to make statements. Citizens expressing their views were neither put under oath nor subject to cross-examination by the license applicants. A verbatim transcript of the hearing was not made. The plaintiffs appeared at the hearing and made statements.
Subsequent to these hearings, the license committee met and voted to recommend denial of plaintiffs' renewal license applications because of both the nude dancing entertainment provided by the applicants in their taverns and because of the negative effects this form of entertainment allegedly had on the *47 community. The city council, upon receipt of their license committee's recommendations and the reasons for those recommendations, voted to deny plaintiffs' applications for renewal of their Class "B" Fermented Malt Beverage and Intoxicating Liquor Licenses.
It is agreed that Racine's renewal licensing procedure is in accordance with Wis.Stats. §§ 176.05(1) and (8), and that unless plaintiffs possess the liquor license denied them, they will be unable to continue operation of their taverns, taverns in which they each have a substantial investment.
Reaching the merits of this controversy,[9] we find that when Racine failed to provide plaintiffs with (1) notice of the charges upon which denial of their liquor licenses was urged, (2) an opportunity to respond to those charges, (3) an opportunity to present witnesses under oath, (4) an opportunity to confront and cross-examine opposing witnesses under oath, and (5) the opportunity to have a verbatim transcript made at their own initiative and expense, it failed to provide plaintiffs with a hearing commensurate with Fourteenth Amendment due process. We further find that §§ 176.05(1) and (8) of the Wisconsin Statutes, as construed by the Wisconsin Supreme Court, are unconstitutional insofar as they expressly authorize a hearing not meeting minimal due process demands.[10]
The due process clause of the Fourteenth Amendment is one of subtle shading, embodying differing rules of fair play for differing types of proceedings.[11] In any given case the answer to whether the constitution requires a hearing or a specific type of hearing depends not upon what labels might be attached to the matter in dispute[12] but rather depends upon a balancing of the citizen's stake in the matter vis-a-vis the Government's need for abbreviated decision making.[13] In the *48 case at hand such a balancing, even when divorced from analogous precedent, leaves room for but one conclusion.
The stake of the plaintiffs is both their occupations and their investments for denial of the renewal of a liquor license bars them not only from selling liquor but substantially impairs the value of their taverns. They seek a hearing in which they are provided with a meaningful opportunity to disprove damaging charges and demonstrate that they are deserving of being licensed to continue in their chosen businesses.
There is no dispute that Racine's (and Wisconsin's) interest in being able to deny liquor licenses in general is substantial. However, its interest in being able to deny the renewal of licenses with no other safeguard than a legislative hearing is at best minimal. While defendants have chosen to remain largely silent on this issue, we can surmise but two arguable factors suggesting the foregoing of an adversary-type hearing cost and inconvenience.[14] Both, however, are of questionable application. There would seem little reason, for instance, why increased expenses inherent in a more formal type hearing might not at least be partially recouped by taxing "costs" to the losing party, as is the practice in litigation before a court.[15] If a legislative hearing may be more convenient, certainly the adversary hearing of the type we hold as required today better serves the state and city's interest in ascertaining the truth. None of the rights set forth in our opinion today preclude the gathering of information; rather the rights set forth act to better insure that Racine will have the entire picture before it when it acts.[16]
The Supreme Court has on several occasions held that a hearing in keeping with due process is required when the state denies an occupational license.[17] The fact that the cases before the Supreme Court might have touched areas of special local concern has not deterred this constitutional mandate.[18] We find *49 two cases in particular, one affirmed and the other cited with approval by the Supreme Court, to be most compelling. In Constantineau v. Grager, 302 F.Supp. 861, 865 (E.D.Wis.1969), this court held that before an individual might be denied the right to purchase liquor he was entitled "to an opportunity to confront the person claiming that his conduct warrants his being `posted' and to present his side of the story before he is in fact `posted.'" This holding was affirmed by the Supreme Court. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).
In Hornsby v. Allen, 326 F.2d 605, 608 (5th Cir. 1964), the Fifth Circuit held that before a city may deny a license to sell liquor "the parties must generally be allowed an opportunity to know the claims of the opposing party, [citations omitted], to present evidence to support their contentions, [citations omitted], and to cross-examine witnesses for the other side, [citation omitted]." The Supreme Court cited Hornsby, specifically noting that it dealt with liquor licensing, in support of its holding that due process requires a hearing in public assistance cases. Goldberg v. Kelly, 397 U.S. 254, 262 n. 9, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1969).
We find in balancing the interests involved in the cases before us that the due process clause of the Fourteenth Amendment requires in the instant setting a hearing "granted at a meaningful time and in a meaningful manner."[19] We further find that the legislative hearing permitted by state statute and granted by Racine fails to qualify as "meaningful" within the context of the cases before us.
First: When the reasons for the denial of a renewal of a license are based upon the testimony or reports of individuals,[20] the applicant must be given an opportunity[21] to present witnesses and confront and cross-examine his accusers. "Anonymous informations" are as repugnant to Americans today as they were to Roman emperors[22] and frontier lawmen.[23] The Supreme Court has increasingly "emphasized in recent years that procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood."[24]
Second: Prior to a renewal license hearing, the applicant must be given timely notice of the reasons urged for denial. Given the wide ranging reasons that may constitute an adequate basis for denial of the renewal of a liquor license in Wisconsin as well as the fact that even if denial might be legally justified the licensing authority usually has the discretion to grant it if circumstances warrant such action, an applicant can present a meaningful defense only if he knows the basis upon which denial is urged. This notice must be timed so as to allow the applicant an adequate opportunity to investigate the charges, gather witnesses, and otherwise prepare a defense. Mere notice of a hearing date or notice of charges only an instant before the hearing fail to satisfy due process.
*50 Third: Due process requires that the applicant for renewal of a liquor license have the opportunity to have the witnesses testify under oath and have a verbatim transcript of testimony made at his own initiative and expense. An applicant has a right to be safeguarded from license denial by deceit. Testimony under oath acts to insure truthful testimony, and a verbatim transcript acts to insure against arbitrary denials.
Defendants argue that state court remedies available under Wisconsin law subsequent to the denial of a liquor license provide the necessary constitutional safeguards. While the minimal procedural requirements of due process may be met in innumerable ways, present Wisconsin post-denial remedies do not suffice. It is, as the Fifth Circuit recently stated, "a hearing within the administrative framework to which" the license applicant is entitled. Glover v. Housing Authority, 444 F.2d 158, 162 (5th Cir. 1971). The requirement of a "meaningful" hearing is not met when one is faced "with the task of overcoming an adverse decree entered by one judge, based upon a finding * * * made by another judge." Armstrong v. Manzo, 380 U.S. 545, 551, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Under Wisconsin law a denial of a liquor license renewal may be reversed in only very limited situations, i. e., only when the municipality is found to have been arbitrary, capricious, or discriminatory.[25] Further, in a renewal situation there is no guarantee that review and relief will be had before the prior year's license lapses. Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).
Denial of a liquor license renewal, as in the cases before us, involves a greater amount of potential damages than are at issue in most civil litigations and in many criminal actions. It is not unimportant to note that were not civil rights jurisdiction proper, each of the plaintiffs herein would be able to assert the necessary $10,000 controversy requirement of Title 28 U.S.C. § 1331. In light of this substantial interest on the part of each of the plaintiffs and balanced against the needs of Racine and Wisconsin for an abbreviated hearing process, we find that due process demands the minimal procedural safeguards set forth above. Insofar as Wis.Stats. §§ 176.05(1) and (8) allow less, they are unconstitutional.[26] Reaching the conclusions *51 we have with regard to the procedure employed in the denial of a renewal license herein, it is unnecessary for us to consider the additional arguments presented by plaintiffs.[27]
It is therefore ordered that plaintiffs' motions for summary judgment be and they hereby are granted, and that defendants' motions for summary judgment be and they hereby are denied.
It is further ordered that §§ 176.05(1) and 176.05(8) of the Wisconsin Statutes, insofar as they permit renewal of liquor licenses to be denied without permitting the applicants an opportunity for an adversary-type hearing in which the applicant is given timely notice of the reasons urged for denial and an opportunity to present, confront, and cross-examine witnesses under oath with a verbatim transcript, be and they hereby are declared unconstitutional.
It is further ordered that the defendant City of Racine is enjoined from denying any application for the renewal of a liquor license as long as §§ 176.05(1) and 176.05(8) of the Wisconsin Statutes fail to require a hearing meeting the standards of due process set forth in this opinion.
It is further ordered that until such time as plaintiffs' renewal liquor license applications are acted upon in a manner commensurate with the due process clause of the Fourteenth Amendment as set forth in the opinion above, the defendant City of Racine shall grant plaintiffs Class "B" Fermented Malt Beverage and Intoxicating Liquor Licenses.
NOTES
[1] The City of Racine is a proper party defendant in light of the equitable nature of this action. Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969); Adams v. City of Park Ridge, 293 F.2d 585, 587 (7th Cir. 1961).
[2] "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute * * * shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges * * *."

For purposes of § 2281, local officers are considered "state officers" when they enforce "a statute which `embodies a policy of statewide concern'." Rorick v. Board of Commissioners, 307 U.S. 208, 212, 59 S.Ct. 808, 811, 83 L.Ed. 1242 (1939); semble Cleveland v. United States, 323 U.S. 329, 332, 65 S.Ct. 280, 89 L.Ed. 274 (1945); Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Board of Regents v. New Left Education Project, 404 U.S. 541, 544 n. 2, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). Sections 176.05(1) and (8) of the Wisconsin Statutes, as construed by the Wisconsin Supreme Court in State ex rel. Ruffalo v. Common Council, 38 Wis.2d 518, 157 N.W.2d 568 (1968), embody a policy of "statewide concern" in that they affirmatively permit all local governments throughout the state to deny a liquor license after only a legislative-type hearing. Sailors v. Board of Education, 387 U.S. 105, 107, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). This case then is unlike that decided in Board of Regents v. New Left Education Project, supra, wherein the challenged state campus regulation affected only a small percentage of the state-run colleges and universities. Nor can it be argued that since the challenged statutes set forth only minimum hearing requirements and thus allow local governments to provide additional hearing rights if they so desire, the statutes are simply ones of alternative "local options," none of which have general statewide effect. First, there is nothing before this court to suggest that there are any local governments in Wisconsin that provide other than a legislative-type hearing. Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). Second, regardless of what some local governments may do, the fact remains that it is the express policy of the challenged statutes, as construed by the Wisconsin Supreme Court, that they need grant no more than a legislative hearing. the "crux of the business [i. e., § 2281] is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy." (Emphasis added.) Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941). When a district court may potentially cripple legislative policy by preventing certain applications or alternatives of a state statute, a three-judge court is required "even if the statute might be perfectly constitutional in some of its intended applications." Boddie v. State of Connecticut, 286 F.Supp. 968, 971 (D.Conn.1968), rev'd on other grounds 401 U.S. 371, 91 S.Ct. 780, 28 L. Ed.2d 113 (1971); Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). Finally it should also be noted that for purposes of § 2281, the actions before us today, both in the nature of the challenge and in the pleadings, are virtually identical to Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), wherein the Supreme Court impliedly affirmed the convening of a three-judge court in this district by affirming on direct appeal the three-judge court's decision of law.
[3] "Authority to grant licenses. Each town board, village board and common council may grant retail licenses, under the conditions and restrictions in this chapter * * * to such persons entitled to a license under this chapter as they deem proper * * *."
[4] "Annual license meetings. All town and village boards and common councils, or the duly authorized committees of such councils, shall meet not later than May 15 of each year * * * for the purpose of acting upon such applications for license as may be presented * * * [and shall act upon the applications] not later than June 15 * * *. * * * No application for a license which is in existence at the time of such annual license meeting shall be rejected without a statement on the clerk's minutes as to the reasons for such rejection."
[5] State ex rel. Ruffalo v. Common Council of City of Kenosha, 38 Wis.2d 518, 157 N.W.2d 568 (1968).
[6] Id. at 524, 157 N.W.2d at 571.
[7] Id. at 525, 157 N.W.2d at 571.
[8] In Misurelli v. Racine, C.A. No. 71-C-316 (E.D.Wis.), the expiring license was held by the partner of applicant. No explanation as to why the partnership decided to change the formal licenseholder is given. In substance, however, the application in Misurelli is undistinguishable from the applications in Robers and Go-Go. Each of the cases before us today involves a renewal situation. We express no opinion as to whether for due process purposes one may distinguish between renewal and initial license applications.
[9] Defendants argue that plaintiffs have failed to exhaust their remedies and, alternatively, that we should abstain. The exhaustion argument was rejected in King v. Smith, 392 U.S. 309, 312 n. 12, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). As for abstention, these cases neither involve pending state criminal actions, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), nor a complex issue of undetermined law, Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Indeed, the Wisconsin Supreme Court has passed on the very issue before us. State ex rel. Ruffalo v. Common Council of City of Kenosha, 38 Wis.2d 518, 157 N.W.2d 568 (1968).
[10] Even without the gloss of the state court's opinion, these statutes would be subject to attack.

"In the present case the Wisconsin Act does not contain any provision whatsoever for notice and hearing. There is no ambiguity in the state statute. * * * The Act on its face gives the chief of police the power to do what he did to the appellee. Hence the naked question * * * is whether that Act on its face is unconstitutional. * * *" Wisconsin v. Constantineau, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971).
[11] Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).
[12] Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); United States v. Husband R. (Roach), 453 F.2d 1054, 1064 (5th Cir. 1971).
[13] Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969); Cafeteria and Restaurant Workers, etc. v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1971).

It is too late in the day to argue that either the Twenty-first Amendment
"The transportation or importation into any State * * * for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." 
or the alleged noxious character of liquor relieves states of all constitutional restraints with regard to liquor control. While cases may differ on the exact mandate of the Fourteenth Amendment, they are in agreement that that mandate attaches with regard to the state's regulation of liquor. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L. Ed.2d 515 (1971); Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); Barnes v. Merritt, 428 F.2d 284, 288 (5th Cir. 1970); Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir. 1947); La Rue v. California, 326 F.Supp. 348 (C.D.Cal. 1971); Midwest Beverage Co. v. Gates, 61 F.Supp. 688 (N.D.Ind.1945); Schwegmann Bros. v. Louisiana Board, 216 La. 148, 43 So.2d 248 (1949).
[14] Two interests are clearly not involved. First, the state and city's interest in control of liquor is not at issue. All that is involved is the manner in which such control is exercised. Second, an interest in speedy adjudication in order to close down a tavern cannot be claimed. Under Wisconsin law one cannot operate a tavern until a license is granted. Indeed, in a "revocation" situation in which the need for emergency action might be claimed, Wisconsin law provides for a hearing with the type of rights plaintiff desires. Wis.Stats. §§ 176.11 and 176.12.
[15] The particular license at issue herein would rarely, if ever, be applied for by an indigent.
[16] Stanley v. Illinois, 405 U.S. 645, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972).
[17] Bratton v. Chandler, 260 U.S. 110, 43 S.Ct. 43, 67 L.Ed. 157 (1922) (real estate); Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926) (accountant); Willner v. Committee on Character, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) (attorney); cf. Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L. Ed.2d 90 (1971) (driver's license) "Once [drivers'] licenses are issued * * their continued possession may become essential in the pursuit of a livelihood." Note also these recent lower court cases: Wasson v. Trowbridge, 382 F.2d 807 (2d Cir. 1967) (expulsion from Merchant Marine Academy); Roth v. Board of Regents, 446 F.2d 806 (7th Cir. 1971) (tenure); Woodbury v. McKinnon, 447 F.2d 839 (5th Cir. 1971) (staff appointment in hospital).
[18] Londoner v. Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908) (property tax); Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135 (1919) (condemnation); Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); and Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (child custody). Note also Hahn v. Burke, 430 F.2d 100 (7th Cir. 1970) (probation); and Bearden v. South Carolina, 443 F.2d 1090 (4th Cir. 1971) (parole).
[19] Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); Bell v. Burson, 402 U.S. 535, 541, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).
[20] Thus a license denial based upon a criminal conviction would not demand cross-examination. This is not to say, however, that the applicant might not put on witnesses to show the mitigating circumstances.
[21] Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).
[22] E. g., Trajan. Carlson v. Landon, 342 U.S. 524, 552 n. 7, 72 S.Ct. 525, 96 L.Ed. 547 (1952).
[23] E. g., Wild Bill Hickok. Jay v. Boyd, 351 U.S. 345, 372, 76 S.Ct. 919, 100 L.Ed. 1242 (1956).
[24] Willner v. Committee on Character and Fitness, 373 U.S. 96, 103, 83 S.Ct. 1175, 1180, 10 L.Ed.2d 224 (1963); Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).
[25] State ex rel. Ruffalo v. Common Council of City of Kenosha, 38 Wis.2d 518, 157 N.W.2d 568 (1968). Defendants argue that de novo review is available pursuant to Wis.Stats. § 66.054(14). However, even assuming that it is in fact a true de novo proceeding, that proceeding offers review of only a Class "B" Fermented Malt Beverage License. Wis. Stats. §§ 66.054(14) and 66.054(1) (g). Review of the Class "B" Intoxicating Liquor License remains reviewable only in accordance with Ruffalo.
[26] What we have said today should not be taken as a condemnation of legislative hearings. As a preliminary step in the licensing procedure, they may well be perfectly proper. In the instant cases, due process was not violated by holding a legislative hearing, but rather due process was violated by omitting an adversary-type hearing. What we hold then is that if legislative hearings are employed in the licensing procedure, then there must be interposed between the drawing up of the charges and the city council vote an orportunity for the applicant to respond as set forth in this opinion. Willner v. Committee on Character and Fitness, 373 U.S. 96, 105, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); Ewing v. Mytinger and Casselberry, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

Nor should our opinion today be taken to suggest that whenever by way of legislation Racine makes a general policy decision applicable to everyone in general that licenseholders, even if they are adversely affected, may demand an adversary hearing to contest the legislation. That question is not before us. The cases we have addressed ourselves to involve the Racine City Council's deciding that individual tavern operators should be denied licenses because of their conduct.
[27] These arguments are: first, that the First Amendment protects nude dancing in taverns. Compare La Rue v. California, 326 F.Supp. 348 (C.D.Cal.1971), probable jurisdiction noted 404 U.S. 999, 92 S.Ct. 559, 30 L.Ed.2d 551 with Paladino v. City of Omaha, 335 F.Supp. 897 (D.Neb.1972), and Hodges v. Fitle, 332 F.Supp. 504 (D.Neb.1971). The second argument is that there was insufficient prior warning or legislative standards that nude dancing would be grounds for license denial. See Barnes v. Merritt, 428 F.2d 284 (5th Cir. 1970).