**ESCHEAT, INC., a Wisconsin corporation, d/b/a the Whiskey A-Go-Go, Plaintiff,**

v.

**Donald PIERSTORFF et al., Defendants.**

**No. 72-C-329.**

United States District Court,
W. D. Wisconsin,

Feb. 21, 1973.

Bruce Protzmann, Marc Dorfman, Madison, Wis., for plaintiff.

John G. Gerlach, Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This civil action for injunctive relief challenges the constitutionality of the revocation of plaintiff's liquor license. Plaintiff operated a tavern in the Town of Madison which featured nude and semi-nude entertainment. Defendant Meier is the Clerk of the Town of Madison, and the remaining three defendants constitute the Board of Supervisors of the Town Board of the Town of Madison. In an earlier proceeding in this case plaintiff sought a preliminary injunction preventing defendants from conducting the license revocation hearing. I denied plaintiff's motion and the hearing took place, resulting in a decision by the Board of Supervisors to revoke plaintiff's liquor license. Plaintiff has now moved for a preliminary injunction ordering the reinstatement of its license. For the sole purpose of deciding this motion I find as facts those matters set forth under the heading "facts."

### FACTS

Plaintiff is a Wisconsin corporation which operates a tavern in the Town of Madison known as "The Whiskey A-Go-Go." Entertainment at the tavern includes nude and semi-nude dancers, some of whom have engaged in sexual contacts with members of the audience. No person under 18 years of age is admitted to the tavern. A sign posted upon the only public entrance warns potential customers of the nude entertainment.

On September 1, 1972, Terry C. Volk, president of the plaintiff corporation, was served with a summons and complaint pursuant to Wis.Stat. § 176.11

(1969), which, in conjunction with § 176.12, establishes a procedure for the revocation of liquor licenses by local authorities.[1] The summons states that the ground for the complaint is that plaintiff maintained "an indecent house by presenting performances of lewd, obscene and indecent matter." The Board of Supervisors of the Town Board of the Town of Madison, composed of defendants Frederick, Pierstorff, and Schwengle, conducted a hearing on September 7, 8, and 12, 1972, to determine whether plaintiff's liquor license should be revoked. At the hearing stenographic notes were taken, witnesses were sworn, and plaintiff's counsel were given the opportunity to cross-examine adverse witnesses and to present testimony. On October 2, 1972, the Town Board voted to revoke plaintiff's liquor license on the ground that plaintiff maintained "an indecent house" by presenting "lewd, obscene, and indecent" performances.

Although it was unable to serve liquor "The Whiskey A-Go-Go" remained open and continued to provide entertainment similar to that provided in the past. After the loss of its license, plaintiff's net revenues dropped considerably. Although approximately 70 to 150 persons per day attended these performances, plaintiff operated at a net loss of approximately $1,000 per week after the loss of its license. Because of the growing losses, Terry Volk closed the "Whiskey A-Go-Go" indefinitely on October 30, 1972.

## OPINION

Jurisdiction is present. 28 U.S.C. § 1343(3); 42 U.S.C. § 1983.

Plaintiff advances three theories in support of its claim: (1) defendants improperly applied the standards of obscenity in determining that plaintiff operated an "indecent house;" (2) because the revocation of a liquor license constitutes a "grievous loss," such a revocation must be preceded by appropriate procedures, which include a judicial decisionmaker; (3) because the effect of the revocation of plaintiff's liquor license was to prevent the presentation of

1. Those statutes read as follows:

**176.11** *Revocation of license by local authorities.* Upon complaint made in writing under oath by any resident in, and filing with the clerk of, any town, village or city that any such licensed person therein has violated any provision of this chapter or keeps or maintains a disorderly or riotous, indecent or improper house, or that he has sold or given away any intoxicating liquor to any minor, or to persons intoxicated or bordering upon intoxication, or to known habitual drunkards, or that he has not observed and obeyed any order of such supervisors, trustees, aldermen, or county superintendent of the poor, or any of them, made pursuant to law, the proper town board, village board or common council shall issue a summons, to be signed by the clerk, directed to any peace officer or constable therein, commanding the person so complained of to appear before them on a day and at a place in such summons named, not less than 3 nor more than 10 days from its date, and show cause why his license should not be revoked. Such summons shall be served at least 3 days before the time at which such person is commanded to appear, and may be served either personally. or upon the person in charge of the place to which such license relates.

**176.12** *Procedure on hearing; effect of revocation.* If such persons shall not appear as required by the summons the complaint shall be taken as true; and if the board shall deem its allegation sufficient the license shall be revoked, and notice thereof shall be given to the person whose license is so revoked; but if such person shall appear and deny the complaint each party may produce witnesses and be heard by counsel. If upon such hearing the board shall find the complaint to be true the license shall be suspended for not less than 10 days nor more than 90 days or revoked, and if untrue the proceeding shall be dismissed without costs to the accused, and if the complaint be found by the board to be malicious and without probable cause the cost shall be paid by the complainant, and the board may require security therefor before issuing the summons as aforesaid. When a license is revoked it shall be so entered of record by the clerk, and no other license shall be granted to such person within 12 months of the date of its revocation nor shall any part of the money paid for any license so revoked be refunded.

performances arguably protected by the first amendment, such a revocation may be constitutionally accomplished only by a procedure providing for prompt judicial review, initiated by defendants. In order to prevail on its motion for a preliminary injunction, plaintiff must demonstrate that it has a reasonably good chance of success on the merits and that it will suffer irreparable harm if the injunction does not issue.

### (1) Standards of obscenity

Plaintiff urges that, in determining that "The Whiskey A-Go-Go" was an "indecent house," defendants improperly applied the standards of obscenity established by the Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) and Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). In particular, plaintiff contends that, instead of evaluating the dancing performances as a whole, as required by *Roth* and *Memoirs*, defendants considered only isolated portions of the performances in making their determination.

Relevant to this theory is the recent decision of California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). In that case various liquor licensees challenged rules promulgated by the California Department of Alcoholic Beverage Control regulating the type of entertainment which may be presented in licensed bars. The rules prohibit certain activities such as the "performance of acts, or simulated acts, of 'sexual intercourse . . .,'" and the "actual or simulated 'touching, caressing or fondling on the breast, buttocks, anus, or genitals.'" California v. LaRue, *supra*, at 111–112, 93 S.Ct. at 394. A three-judge court found that certain of the rules unconstitutionally abridged the plaintiffs' freedom of expression. Among other grounds for its holding, the three-judge court noted that the chal-lenged rules focus on isolated portions of a performance rather than on the performance as a whole. LaRue v. State of California, 326 F.Supp. 348, 353 (C.D. Cal.1971).

A divided Supreme Court reversed. The majority reasoned that the state had determined that naked or lewd entertainment should not take place simultaneously with the sale of liquor by the drink. Because of the power conferred upon the state by the 21st amendment,[2] the majority held that the state could condition the holding of a liquor license upon the observance of the Department rules, even though the ambit of those rules includes first amendment activity.

> "While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments which it licenses to sell liquor by the drink." 409 U.S. at 118, 93 S.Ct. at 397.

*LaRue* makes clear that the limitations imposed by the first amendment upon the state's power to regulate obscenity are substantially relaxed in the context of a proceeding for the revocation of a liquor license. Whatever standard of obscenity applies in that context, it is a standard which allows the state considerably more leeway than is allowed by the *Roth-Memoirs* standard. Thus in the instant case the test purportedly applied by defendants (the *Roth-Memoirs* standard) was a standard under which plaintiff would be allowed more freedom in presenting nude and semi-nude entertainment than plaintiff would be allowed under *LaRue*.

Plaintiff contends that the *Roth-Memoirs* standard was misapplied

---

**2.** Section two of that amendment provides:
"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

since defendants focused on particular incidents rather than on the performances as a whole. Yet it was precisely this type of relaxation of the *Roth-Memoirs* standard which the *LaRue* majority condoned. For these reasons I have determined that plaintiff has not shown a reasonably good chance of success in proving that defendant either applied an improper standard or misapplied a proper standard, in such manner as .to infringe upon plaintiff's first amendment rights.

(2) Procedures required by the presence of a "grievous loss"

Plaintiff's second argument is that the revocation of its liquor license constitutes a "grievous loss" within the meaning of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and that the requisite procedures which must precede this loss include the right to a judicial decisionmaker. This argument does not depend upon the existence of alleged first amendment activity, but only upon the nature of the "loss" suffered by plaintiff.

■■■ In the case of Misurelli v. City of Racine, 346 F.Supp. 43 (E.D.Wis., 1972), plaintiff tavern owners challenged the defendant's denial of their applications for renewal of liquor licenses. A three-judge court determined that the impact upon the tavern-owner whose application for a renewal of his liquor license is denied, is such that the following procedures must attend such a denial: (1) notice of the charges against him; (2) an opportunity to respond to the charges; (3) an opportunity to present witnesses under oath; (4) an opportunity to confront and cross-examine witnesses under oath; (5) the opportunity to have a verbatim transcript made at plaintiff's own initiative and

expense. Plaintiff does not contend that any of these procedures was omitted from the proceeding in which its license was revoked. I have concluded that the procedural steps required in *Misurelli* are a reasonable minimum in the context of a renewal or revocation of a liquor license, and that plaintiff has not shown a reasonably good chance of success in establishing that, without regard to first amendment considerations, plaintiff is also entitled to a judicial decisionmaker.[3] Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970).

(3) Whether presence of "expression" requires judicial determination

Plaintiff's final contention is that since the license revocation significantly affects plaintiff's capacity to present performances arguably covered by the first amendment, the revocation can be accomplished only by a procedure in which the administrative revocation is followed by prompt judicial review, initiated by defendants. Plaintiff relies on Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) and Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971).

In *Freedman* the Court struck down a state scheme for administrative licensing of motion pictures, holding that .

> "because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint." 380 U.S. at 58, 85 S.Ct. at 739.

To effectuate this holding the Court established three requirements to which schemes for administrative censorship must conform: (1) there must be assurance, "by statute or authoritative judi-

---

3. In the original complaint plaintiff also contended that Wis.Stats. §§ 176.11 and 176.12 (1969) are unconstitutional in that, although they provide for ·the rights to notice, hearing, representation by counsel, and presentation of witnesses, they do not provide for the additional procedures required in *Misurelli, supra*. However, since plaintiff itself was provided with the *Misurelli* procedures, it lacks standing to raise this claim.

cial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film;" (2) "[a]ny restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution"; and (3) "the procedure must also assure a prompt final judicial decision" to minimize the impact of error committed at the administrative level.

In Blount v. Rizzi, *supra*, the Court struck down certain postal laws designed to control the use of the mails for commercial distribution of obscene materials. Under the challenged laws, the Postmaster General, following administrative hearings to determine the obscenity *vel non* of the materials, could halt use of the mails and of postal money orders for commerce in the allegedly obscene materials. Further provisions of the statutes permitted the Postmaster General to obtain a court order enabling him to detain the defendant's incoming mail pending the outcome of the administrative hearing. The laws provided for an administrative appeal, but did not require the Postmaster General to obtain prompt judicial review of decisions adverse to the defendant. On the authority of Freedman v. Maryland, *supra*, the Court held the statutes unconstitutional in that they failed to require the Postmaster General to obtain a prompt judicial determination of the obscenity of the material and in that there were no time limits on the life of the interim judicial order, which the government was permitted (but not required) to obtain pending completion of the administrative proceeding.

In explaining the need for judicial determination, the Court quoted from Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958): "[Since] the line between speech unconditionally guaranteed and speech which may legitimately be regulated . . . is finely drawn . . . [t]he separation of legitimate from illegitimate speech calls for . . . sensitive tools . . . .;" and from *Freedman, supra*, 380 U.S. at 57–58, 85 S.Ct. at 738: "there inheres the danger that [a nonjudicial decisionmaker] may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression." Thus, a prompt judicial determination in a situation of the *Blount* or *Freedman* variety is necessary because of the independence of the judiciary and because of the "sensitive tools" which the judiciary brings to the delicate task of distinguishing between protected and unprotected speech. I turn now to the question whether the *Freedman* and *Blount* rules govern the present case.

■ A preliminary issue is whether, in the aftermath of *LaRue, supra*, any activity taking place within a licensed tavern can be protected by the first amendment. Earlier in this opinion in my description of the *LaRue* holding, I noted that the majority held that a state may prohibit the presentation in bars of performances which are within the limits of constitutionally protected free expression. Although the majority does not face the question directly, it implies that not all performances of this genre may constitutionally be prohibited in bars:

Viewed in this light, we conceive the State's authority in this area to be somewhat broader than did the District Court. This is not to say that all such conduct and performance is without the protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of Bacchanalian revelries which the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater. 409 U.S. at 118, 93 S.Ct. at 397.

The final sentence in this passage suggests that a "scantily clad ballet troupe" performing in a theater would receive the full protection of the first amendment. Would such a performance receive similar protection if the theater were licensed to serve liquor? The passage quoted suggests an affirmative answer. Furthermore, a negative answer would constitute an erosion of first amendment freedom which I am unwilling to accept, absent an explicit holding by the Supreme Court requiring such a result. Therefore, I conclude that some shows which fall somewhere between Mary Poppins, on the one hand, and "Bacchanalian revelries," on the other, even when performed in a bar, continue to be entitled to first amendment protection.[4]

The question now arises whether, in revoking the liquor license of a bar featuring shows in this no man's land, a state must observe the requirements set forth in *Freedman* and *Blount*. In *Freedman*, a motion picture disapproved by the Maryland censor could in no way be distributed or shown to the public. In this sense *Freedman* differs from the present case, where plaintiff remains free to present nude and semi-nude performances provided he does not do so in a bar. *Blount*, on the other hand, appears closer to the instant case than to *Freedman*. A distributor of allegedly obscene materials, prohibited by the Postmaster General from using the mails as a channel of distribution, would remain free to vend his wares through other channels, such as retail stores or door-to-door sales campaigns. Although such a distributor would retain some capacity to continue his business, the impact of loss of use of the mails was sufficient to invoke the *Freedman* rule.

■ The impact of the loss of its liquor license upon plaintiff's capacity to present dancing and other performances is comparable to the impact upon the *Blount* distributors of the loss of the use of the mails. Although the "Whiskey A-Go-Go" continued to draw substantial audiences, ranging from 70 to 150, after the loss of its license, the loss of the income previously derived from the sale of liquor converted the business into a losing venture and eventually required it to close. Thus, defendant's decision to revoke plaintiff's license effectively terminated the performances which had been presented there. As I noted in my discussion of *LaRue*, some performances of this genre presented in a bar may merit first amendment protection and some may not. Thus, the license revocation decision could have the effect of suppressing protected expression. For this reason, the "sensitive tools" of an independent judiciary are as necessary in the present case as they were in *Blount*.

■ In one sense *Blount* differs from the present case. While the Postmaster General was authorized to deprive the *Blount* distributors of use of the mails, an important channel for the communication of ideas, in the present case none of plaintiff's channels of communication have been blocked; rather, plaintiff's principal means of financing alleged first amendment activity has been eliminated. In one case, government physically obstructs communication; in the other, government interdicts the flow of revenues necessary to finance the alleged communication. The intent and effect of the Board of Supervisors' action in the present case was to terminate alleged expression which the Board found objectionable. The intent and effect of a decision by the Postmaster

---

4. I express no opinion, of course, whether the actual performances at the Whiskey A-Go-Go, as described in the testimony taken by the Town Board, or as described in pleadings or affidavits filed in this action in this court, were entitled to first amendment protection in light of California v. LaRue. It may be that they were not entitled to such protection. But the question in this court is whether the State of Wisconsin is required by the Fourteenth Amendment to provide for prompt review by a state court when an administrative agency has decided that certain performances are not protected by the First Amendment.

General adverse to a distributor would no doubt have been similar. Whether an administrative body choses direct, or indirect but effective, means to suppress allegedly obscene expression, it must obtain prompt judicial review in the manner required by *Freedman, supra.* I conclude, therefore, that plaintiff enjoys a reasonably good chance of success in showing that *Blount* governs the present case and that the procedure by which plaintiff's liquor license was revoked is unconstitutional.

Since a result of the license revocation has been the termination of alleged first amendment activity, I conclude that plaintiff has met its burden of showing irreparable harm.

### Three-judge Court

A final matter remains. Plaintiff has requested pursuant to 28 U.S.C. § 2281 that a three-judge court be convened since the complaint seeks an injunction restraining the operation of state statutes, specifically Wis.Stats. §§ 176.11 and 176.12 (1969). I have concluded that it is unnecessary to convene a three-judge court since the relief sought in the complaint does not entail "restraining the enforcement, operation or execution" of §§ 176.11 or 176.12. Those statutes provide for an administrative determination of whether a liquor license should be revoked. In seeking an order by this Court that the license-revoking authority must secure prompt judicial approval of its decision, plaintiff does not call into question the constitutionality of the statutes providing for administrative decision. Rather, plaintiff is contending that his rights were violated by the absence of a statutory requirement for prompt judicial review of that decision. Plaintiff also urges that the statutes are unconstitutional in that they fail to provide for certain procedural safeguards, such as the right to cross-examination of adverse witnesses and to sworn testimony. This claim does not impugn the constitutionality of §§ 176.11 and 176.12 since those statutes in no way prohibit the procedural safeguards which in plaintiff's view must be observed. Rather, plaintiff urges that the procedures provided for by existing statutes must continue to be observed, while contending that additional procedures must also be followed.

Accordingly, it is hereby ordered that plaintiff's motion that a three-judge court be convened is denied and that, pending a decision on the merits of this case, defendants are ordered to reinstate plaintiff's liquor license unless and until it is revoked pursuant to an appropriate hearing before a court.