**Raymond Edward PARKS, Plaintiff-Appellant,**

v.

**Ivan ALLEN, Jr., Mayor of the City of Atlanta, et al., Defendants-Appellees.**

**No. 28815.**

United States Court of Appeals, Fifth Circuit.

May 14, 1970.

Wesley R. Asinof, Atlanta, Ga., for plaintiff-appellant.

Thomas Choyce, Henry L. Bowden, Atlanta, Ga., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and BELL and INGRAHAM, Circuit Judges.

PER CURIAM.

This is the second appeal of this case, and reference is made for a statement of the case to Parks v. Allen et al., 409 F.2d 210 (5th Cir. 1969), wherein another panel of this court reversed and remanded the case to the district court for further development of the record on the reasonableness of limiting liquor licenses to two to a family.

In obedience to the remand, the district court conducted a full hearing, considered the evidence and the law and entered judgment for the defendants. Findings of Fact and Conclusions of Law entered

by the district court are set out in full in the appendix hereto. The Findings of Fact and Conclusions of Law are supported by the evidence and the law, and the judgment of the district court is affirmed.

## APPENDIX

## FINAL ORDER DENYING INJUNCTION AND ORDERING JUDGMENT ENTERED FOR DEFENDANTS

### (Number and Title Omitted)

### Filed: Sep. 11, 1969

This case involves an attack by plaintiff, an unsuccessful applicant for a retail liquor license in the City of Atlanta, on the reasonableness of the City ordinances which deny him the right to obtain a license when another member of his family already holds two such licenses.[1]

In its initial appearance, the court granted summary judgment to the defendants on uncontraverted affidavits submitted in support of the motion. On appeal, the case was remanded "for further development of the record on the reasonableness of limiting liquor licenses to two to a family." Parks v. Allen, 409 F.2d 211 (1969). Upon remand, the court conferred with counsel and set such a hearing which was continued by agreement until August 11th at which time evidence was presented on which the court makes the following

## FINDINGS OF FACT

Prior to 1964, the retail liquor industry in the City of Atlanta was considered by all knowledgeable people to be monopolistic and was sustained in such fashion primarily by two factors: the minimum price floor established by the State Revenue Department and the so-called "ward courtesy" system of licensing in effect within the city. The former prohibited pricing below a certain level, which guaranteed each retail license holder a 21% gross profit. In the latter system one city alderman in the ward concerned could prevent the issuance of a retail license in the ward by a negative vote. This lead to so-called "politic licensing" within the city with claims of extraordinary political contributions to the aldermen concerned. At the time, state law allowed only two licenses to each person, but through "ward courtesy", a few persons were able to obtain inordinate control over the retail liquor business by obtaining two licenses in their own names, two in the names of a spouse, son or daughter, (in or out of the household), or two in the name of a lessee or employee, over whom financial pressure was exerted through rentals or salaries. With the help of the noncompetitive state pricing system, such preferred persons reaped huge profits. This in fact was the evil sought to be removed by Hornsby v. Allen, 326 F.2d 605 (1964).

Public dissatisfaction with the system arose and newspaper editorials and public

1. Section 5-1. Definitions. Family shall mean and include any person related to the holder of such license within the first degree of consanguinity or affinity as determined according to civil law. Section 5-26. Limitation on number of licenses within a family.

(a) No application for a retail license to sell spirituous liquors in the package at retail shall be granted where the person applying for such license and all members of such person's family already hold two interests in a license to sell spirituous liquors by the package at retail.

(b) As used in this section an interest in a license shall be deemed to exist if the person involved is the outright owner of the license, a co-owner of the license, a partner in a partnership which owns all or any part of a license, a stockholder in any corporation organized for pecuniary gain which owns all or any part of a license, an owner, lessor, sublessor or stockholder in any corporation organized for pecuniary gain owning or leasing any real estate which is occupied by a retail liquors store or shares in any of the income or corpus of any trust fund or estate having any interest in a retail liquor store * * * Notwithstanding any of the other provisions of this section, no one person shall be deemed to have more than one interest in any one license.

Similar provisions exist in State Revenue regulations at 560-2-5-.02(3).

opinion demanded action. Studies were undertaken by various public bodies recommending drastic changes. See Ex. # 1, Attorney General's report of Fulton County liquor investigation, particularly at pages 7, 8; Ex. # 2, Fulton County Grand Jury presentments, May-June Term 1963, particularly at pages 1–5. (Independent studies indicated that 10 to 15 families controlled 75% of the retail liquor industry in Atlanta under the system).

As seen, family connections formed an integral part of the abuse and it was determined that limitations on licenses to members of one family was a means to break up the existing concentrated control. The reasonableness of such action is the central question now before the court. Since its adoption, the problem has greatly improved due to the abolition of the state pricing system in 1965 and the adoption of general licensing standards over the past five years in conformance with *Hornsby* under persistent prodding by the reformists and the courts. However, all abuses are not yet removed.

Evidence produced at the hearing shows that there is no city regulation governing discrimination in pricing and/or brand preferences. But, in spite of state-prohibitions on the subject, there exist preferential pricing in favor of large retailers usually in the form of discounts or "extras," i.e. a 13th bottle to the case, etc. Also, scarce preferred brands are often "paired" with volume purchases of common brands. Moreover, again in spite of state prohibitions to the contrary, "split deliveries" exist wherein a discount is granted for large purchases delivered to two or more locations. Small single-location licensees have found it difficult to survive under such circumstances and, in some instances, have been driven out of business.

While "bigness" itself can produce such abuses the concentration of numbers of licenses in one family can and does create additional opportunities to nullify competition. Thus, volume could be built up by combined purchases between family licensees and "split deliveries" could easily be arranged under such circumstances. Moreover, such concentration of licenses in one geographical area could itself facilitate retail price-fixing, even under a competitive system.

The petitioner here is 36 years old, married with three children, and lives separate and apart from his father, who already holds the two licenses permitted. His parents separated while he was a small child and he has spent virtually no time in his father's home since the separation. If granted a license he would finance his business with his own and borrowed funds. He asserts that his father would have no interest in or control of such businesses.

## CONCLUSIONS OF LAW

■ It is firmly established that the state through the 21st Amendment has a broad right to regulate traffic in intoxicating liquors in the valid exercise of its police power. Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620 (1890); Joseph E. Seagram & Sons, Inc. v. Hostetler, 384 U.S. 35, 86 S.Ct. 1254 (1966); Hornsby v. Allen, 326 F.2d 605 (1964). Moreover, the Fourteenth Amendment admits of the exercise of a wide scope of discretion in this regard. It only prohibits what is done when it is without any reasonable basis and therefore is purely arbitrary. E.g., Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L. Ed. 865 (1920); Mestre v. City of Atlanta, 255 F.2d 401 (5th Cir. 1958). Moreover, the exercise of the power in connection with the liquor industry particularly allows the widest discretion and is subject to minimal demands of the Fourteenth Amendment's due process and equal protection requirements. See United States v. Frankfort Distillers, 324 U.S. 293 at 299(5), 65 S.Ct. 661, 89 L.Ed. 951 (1945); Atlanta Bowling Center, Inc. v. Allen, 389 F.2d 713 (5th Cir. 1968); Lewis v. City of Grand Rapids, 356 F.2d 276 (6th Cir. 1966).

■ Thus, there is a rebuttable presumption of the propriety of the ordi-

nances under attack and, only upon a clear showing that they are arbitrary, should the court substitute its judgment for that of the legislative body concerned. In such respect, legislative bodies are free to act on the basis of such intangibles as public opinion, hearsay, rumor and an original self-determination of proper policy and, unlike courts, are not limited to admissible testimony or a preponderance of the evidence or other judicial standards. Accordingly, the courts ought to be loath to interfere. If the ordinance under attack is arguably reasonable, it should be sustained. If, on the other hand, it is wholly without rational basis and is essentially arbitrary, it ought to be voided. See S. H. Kress & Co. v. Johnson, 16 F.Supp. 5 (D.Colo. 1936), aff'd 299 U.S. 511, 57 S.Ct. 49, 81 L.Ed. 378 (1936)

■ Tested on the above principles, there is no hesitancy in concluding that the ordinance in question reasonably relates to the problem sought to be controlled. The evidence adduced on hearing demonstrates this relationship both at the time of passage and even under the improved conditions existing in the industry today. Certainly, it cannot be said as a matter of law that the ordinances have no rational basis on which to rest. Their enforcement tends to increase competition and lessen the evils described of price discrimination and split deliveries. The mere fact that there may be other measures directed toward the same evils forms no basis for rejection.[2] Such measures as price and delivery control may be difficult or excessively expensive to police and enforce. Accordingly, the court finds that a factual basis for such ordinances exists and that they constitute

a reasonable exercise of the police power by the City of Atlanta.

■ (2) Over and beyond such factual determination, however, the plaintiff contends that the ordinances per se are unconstitutional in that they penalize him unjustly. Thus, "the condition of a man's birth or a matter over which he has no control cannot be made the basis of a rule restricting him from a license unless his condition is something that would make him unfit." This claim that the ordinances are facially unconstitutional is likewise rejected. The argument presupposes that the sale of liquor is a right, rather than a privilege. And the test is the reasonableness of the ordinance as relates to the business licensed and not the reasonableness as it relates to a particular applicant. As seen, the ordinance is reasonably related to the control of abuses in the industry and plaintiff is on prior notice of its requirements. The mere fact that he does not qualify by virtue of birth is no bar, even though it might create a personal hardship. Circumstances of birth may preclude a person from holding certain jobs under the laws against nepotism. E.g. 18 U.S.C.A. § 1910. Or from holding public office, even that of President. E. g. ARTICLE II, Section 1, Constitution. Circumstances of age, residence, education, solvency and the like also inhibit certain persons from following various occupations or enjoying other privileges afforded under the law, and no authority is found to prevent such reasonable restrictions.

Accordingly, the injunction is denied and judgment may enter for the defendant.

It is so ordered.

---

2. The mere fact that the state has unsuccessfully sought to control the problem by other means, such as are contained in the state regulations governing wholesalers, would not constitute preemption of the subject matter insofar as the municipal privilege is concerned. Georgia law expressly permits municipalities to adopt their own regulations relating to liquor licensing over and above any state laws and regulations by Georgia Code § 58–1028 which provides:

Nothing in this chapter shall be construed as preventing any municipality or county from adopting all reasonable rules and regulations as may fall within the police powers of such municipalities or counties to regulate any business provided for in this chapter. All municipal and county authorities issuing licenses shall within their respective jurisdiction have authority to determine the location of any distillery, wholesale business, or retail business licensed by them.