**William A. HAGAN, Sr. and Big Red Package Store, Inc., Plaintiffs,**

v.

**M. Tom FAIRCLOTH, Mayor of the City of Thomasville, Georgia, et al., Defendants.**

**Civ. A. No. 81–78–THOM.**

United States District Court, M. D. Georgia, Thomasville Division.

Feb. 16, 1981.

Ronald A. Cohen, Whitehurst & Cohen, Thomasville, Ga., for plaintiffs.

William C. Sanders and B. B. Earle, Jr., Thomasville, Ga., for defendants.

## OPINION

ELLIOTT, District Judge.

This is another case in which a federal court is called upon to act as a super liquor licensing board. The matter was brought on for full evidentiary hearing and this opinion is filed in compliance with the requirements of Rule 52 of the Federal Rules of Civil Procedure.

The Plaintiff William A. Hagan, Sr., is the owner of Big Red Package Store, Inc. and he has heretofore been granted a license by the City of Thomasville, Georgia to operate a retail liquor package store at 343 East Jackson Street in the City. He wants to transfer the license to a new location at 429 Smith Avenue and the City has declined to authorize the transfer. Reaching back to *Hornsby v. Allen*, 326 F.2d 605 (5 Cir. 1964), he draws upon such life as yet remains in that badly beaten horse,[1] and seeks an order from this Court mandating the approval of the transfer and the issuance of the new license.

In 1975 the Board of Commissioners of the City of Thomasville adopted as a part of the City Code of Thomasville a comprehensive ordinance identified as *"Article V. Spirituous Liquors"* which set out the rules and regulations governing the application for and issuance of liquor licenses. The ordinance went into considerable detail concerning the content of the application for license, advertisement of the application, citizenship and criminal record of the applicant, floor space and parking facilities, minimum distances from residences, schools and churches, etc. In addition to these specifics, the ordinance contained a Section couched in general language as follows:

"This article has been enacted for the purpose of promoting the health and general welfare of the city, to establish reasonable and ascertainable standards for the regulation and control of the licensing and sale of spirituous liquors, to protect and preserve schools, churches, to give effect to existing land use, to preserve residential areas with reasonable consideration being given to the character of the area and their peculiar suitabil-

---

1. See Sentell, *Local Government Law and Liquor Licensing: A Sobering Vignette*, 15 Ga.L. Rev. 1039 (1982).

ity for particular uses, the congestion in roads, and streets, and with a general view of promoting desirable living conditions, sustaining the stability of neighborhoods and property values, to protect against the evils of concentration of retail licenses for intoxicating liquors in one family, and/or corporation, and to prevent an undesirable person from engaging in or having an interest in intoxicating liquor or the sale thereof in the city. (Ord. of 9–22–75)" Sec. 5–32.

The ordinance also requires a public hearing with regard to all applications for licenses.

The evidence shows that the Plaintiff's application complies with all of the requirements of floor space, parking, distance from schools and churches, etc., and he contends that he is therefore entitled to automatic issuance of the license. The City officials contend that these are only *minimum* requirements and that by virtue of the general provisions in the ordinance above quoted they can consider other matters envisioned therein in determining whether an application should be approved.

After a public hearing the Commissioners declined to issue the license for reasons then stated and repeated during the hearing in this court as follows: the liquor store would be adjacent to a historic residential area which is now the subject of extensive restoration to such an extent that the area has recently been nominated for an award by the National Trust for Historic Preservation; the store would be only 312.85 feet from the premises of a historic church which is now being restored (the minimum requirement being 300 feet); the location of this store would discourage public and private involvement in these restoration efforts; the location of the store would increase vehicular traffic and traffic congestion and depreciate the value of residential properties in the area and adversely affect the prospect of continued use of the area for residential purposes.

The Defendants acknowledge that the considerations above mentioned are not expressly articulated in the ordinance but they nevertheless assert that they are within the parameters of the provisions of Section 5–32, and that the language of that Section puts an applicant on notice that matters over and beyond the specifics set out in the ordinance would be considered.

It is the Court's view that it would be unreasonable to require the City to anticipate and specify in its ordinance every thing and circumstance which might lead the Commission to reject an application for a liquor license, and this case presents a perfect example of why that is so. Who could have anticipated at the time this ordinance was adopted seven years ago that an area which was then in a state of decline would today be a tourist attraction and be on the verge of receiving an award for historic preservation and restoration?

Section 5–32 speaks of the "general welfare of the City" and the purpose of protecting and preserving existing land use "with reasonable consideration being given to the *character* of the area and their *peculiar suitability* for particular uses" and refers to the need for "sustaining the *stability* of neighborhoods and property values". (Emphasis supplied)  True, this language leaves room for interpretation but it furnishes a sufficient basis upon which an applicant would reasonably have to anticipate that the Commission would consider all relevant factors and not be placed in a strait jacket consisting of distance measurements, absence of felony record, etc.  If it was intended that the Commission would be so bound there would be no reason for a public hearing—it would simply be a rubber stamp process.

The Plaintiff testified that he had never read Section 5–32 of the ordinance and was therefore not aware of its language, but the evidence is that when he made application for the license previously issued to him by the Commission there was some public opposition to his application and he knew from that experience that the Commission considered factors other than specifics of measurement, etc.

A reading of this ordinance requires that we take into account the fact that the traditional local interest in regulating the liquor business calls for the use of broad discretion and flexible procedures. See *Atlanta Bowling Center, Inc. v. Allen*, 389 F.2d 713 (5 Cir. 1968). We should also recall that the action of the licensing authority is presumed to be proper, and only on a clear showing that the Commission has acted arbitrarily should this Court substitute its judgment for theirs. See *Parks v. Allen*, 426 F.2d 610 (5 Cir. 1970). In the circumstances here presented the Court is not persuaded that the action of the Defendants in denying the Plaintiff's application for transfer of his license was either unreasonable or arbitrary.

Insofar as a reading of the complaint may be regarded as asserting a denial of equal protection, it need only be noted that there is no evidence that the Defendants have issued a liquor license to any other person to operate a liquor store in the area above described.

Consistent with the foregoing, the prayers of the Plaintiff's complaint are denied and judgment will be entered accordingly.