This appeal is from a final judgment in favor of plaintiffs, several retail beer licensees of Jefferson County, who challenged the validity of Act 689 of the 1977 Regular Session of the Alabama Legislature under several state and federal constitutional provisions and federal antitrust laws.
Act 689 requires each manufacturer of malt or brewed beverages that markets its products in Jefferson County to designate a sales territory for each of its brands sold in that county and to name an exclusive wholesaler for the territory for each such brand. Additionally, the Act makes it unlawful for any retail beer dealer in Jefferson County to purchase any brand of malt or brewed beverage from anyone other than the designated wholesaler of that brand in the county, under penalty of revocation of the retailer's license for noncompliance.
This action was commenced with the filing of a complaint for declaratory judgment by several retail beer licensees of Jefferson County. Named as defendants were Jefferson County and its three Commissioners, the Alabama Alcoholic Beverage Control Board and its three members, and the state's Attorney General.
The theories advanced in the numerous counts of plaintiffs' complaint can be summarized as follows:
(1) Act 689 violates Article 4, Section 105, Alabama Constitution of 1901, because it is a local law covering a subject subsumed by an extant general law;
(2) The Act violates guarantees of due process and equal protection of the law afforded by the Alabama and United States Constitutions; and
(3) The Act violates the Commerce Clause of the United States Constitution and federal antitrust laws.
At the trial without a jury, the thrust of testimony adduced by plaintiffs was that wholesale beer prices in Jefferson County have risen substantially since passage of the Act, that these prices are parallel among the county's designated wholesalers, and that plaintiffs are no longer able to purchase beer from other counties at competitive prices. Testimony was presented that, but for the Act, plaintiffs could purchase beer from Tuscaloosa County wholesalers, as they had done prior to the Act's passage, at savings in excess of one dollar per case.
Defendants countered with testimony that prior to enactment of the legislation substantial tax revenues from beer sales were being lost because Jefferson County retailers brought into the county beer purchased *Page 117 
from wholesalers outside the county without reporting and paying the applicable tax prevailing in Jefferson County. According to evidence offered by defendants the Act was passed to remedy this situation.
After permitting the parties to file briefs in support of their legal arguments, the trial court rendered judgment in favor of plaintiffs, the retailers.
The trial court's order does not indicate which ground or grounds of invalidity alleged by plaintiffs the court considered determinative of the issue. Consequently, it is incumbent upon us to consider each of the theories advanced by plaintiffs below in order to determine if the trial court's judgment can be sustained on one or more of those theories.
To aid us in examining these issues, the Association of County Commissioners of Alabama was granted leave to fileamicus curiae briefs.
We initially deal with plaintiffs' contentions that Act 689 violates Const. 1901, § 105. That section provides that ". . . [n]o special, private or local law . . . shall be enacted in any case which is provided for by a general law. . . ."
The only statutory provisions specifically identified by plaintiffs as being in conflict with Act 689 are Code 1975, §§28-3-142 and -167, which concern the licensing of wholesalers and retailers of malted and brewed beverages. Section 28-3-142
authorizes licensed wholesalers to sell or deliver such beverages anywhere within the State of Alabama, while Section28-3-167 authorizes licensed retailers to purchase from those wholesalers.
Defendants contend section 105 does not operate to invalidate Act 689 in light of the statutes cited by plaintiffs, when 105 is read in conjunction with the preceding section of the constitution. The latter, Const. 1901, § 104, contains an extensive list of particular subject matters which the Legislature may not regulate by way of special, private or local laws. However, 104 concludes as follows:
 The legislature shall pass general laws for the cases enumerated in this section, provided that nothing in this section or article shall affect the right of the legislature to enact local laws regulating or prohibiting the liquor traffic; but no such local law shall be enacted unless notice shall have been given as required in section 106 of this Constitution.
Plaintiffs respond that the exemption in 104 from restrictions on local legislation has no application to Act 689. Plaintiffs point to the fact that the exemption covers only local laws, not private or special laws, regulating the liquor traffic. Act 689, plaintiffs maintain, is a private or special law.
A local law is defined in Const. 1901, § 110, as "a law which applies to any political subdivision or subdivisions of the state less than the whole," while a private or special law is defined as "one which applies to an individual, association, or corporation."
Plaintiffs argue that the Act applies directly and indirectly to individuals or corporations, i.e., the manufacturers, wholesalers and retailers of beer sold in Jefferson County, but does not regulate Jefferson County as a political subdivision. As plaintiffs couch their contention, the Act applies "in a political subdivision, but not to a political subdivision."
At this point we note that Amendment No. 375 to the Constitution amended § 110 upon its ratification in 1978 and changed the definition of a local law to "a law which is not a general law or a special or private law." This amendment was not in effect, however, at the time Act 689 was passed. Therefore, the classification of the Act is to be determined under the definitions in the quoted portion of the original 110.
In any case, we do not think resolution of the issue as framed by plaintiffs would be any different as a result of the adoption of Amendment 375 in light of our recent holding that an annexation bill is a local law, within the meaning of the amendment, where it is limited in its application to a singlepolitical subdivision of this state. Opinion of the Justices,381 So.2d 632 (Ala. 1980). *Page 118 
In addition to the contention that the Act does not apply to a political subdivision, plaintiffs maintain the Act cannot be local because it confers authority on the Alabama Alcoholic Beverage Control Board (ABC Board) to revoke retail beer licenses for violation of the Act. Finally, plaintiffs argue that the Act's requirement of the designation of exclusive wholesalers forecloses the right of other wholesalers throughout the state to sell to retailers located in Jefferson County, thereby causing the Act to have statewide rather than local application.
Plaintiffs' contentions regarding the ABC Board are without merit. The Act merely states the ABC Board will be notified of a license revocation by the governing body of the county or municipality which has revoked it, and that upon receipt of that notice the ABC Board will give the retailer notice to appear and show cause why his license should not be revoked. Nothing in that provision confers additional authority on the ABC Board to revoke a retail beer license, nor does it require the Board to revoke such a license.
Regarding plaintiffs' argument that the Act cannot be local because it effectively prohibits wholesalers outside of Jefferson County from selling to retailers within that county; that indirect effect does not change the local nature of the Act. This argument is actually a disguised restatement of their basic premise with respect to section 105, namely, that the Act conflicts with Code 1975, § 28-3-142, the general law authorizing licensed wholesalers to sell to any retailer in the state.
Finally, we are not persuaded by plaintiffs' interpretation or construction of the phrase "to a political subdivision" in section 110's definition of a local law. A local law has been defined as one that applies to a particular locality or particular localities to the exclusion of others, while, in contrast, a private or special law has been defined as one which applies to a particular individual or individuals. 2 C. Sands, Sutherland Statutory Construction § 40.01, at 137 (4th ed. 1973). Also see Connor v. State, 275 Ala. 230,153 So.2d 787 (1963); Note, Local Legislation in Alabama: The Impact ofPeddycoart v. City of Birmingham, 32 Ala.L.Rev. 167 (1980).
We interpret the definitions of a local law and a private or special law in 110 as consistent with this view, as opposed to plaintiffs' implied position that legislation must directly
regulate governmental functions of a political in order to be classified as a local Act.
We also think it clear from the Act's language that the legislative intent was to proscribe certain conduct within a particular locality, Jefferson County, rather than to control the conduct of specific persons. Furthermore, "[i]t has long been recognized that an act which was intended to apply to only one county, which is named, is a local act." Opinion of theJustices, 284 Ala. 626, 227 So. 396 (1969). Accordingly, we conclude that Act 689 is a local law.
Plaintiffs next contend that, even if the Act is a local law, notice of its proposed enactment was not given in accordance with Const. 1901, § 106, as required by the terms of the liquor law exemption of 104.
Plaintiffs concede that notice was properly published in Jefferson County. However, the argument is that publication was required in all other counties where licensed wholesalers are situated because the right of these wholesalers to sell to Jefferson County retailers was affected by the Act.
The purpose of 106 is to prevent the deception of those immediately affected by local legislation to the end they may have an opportunity to protest against the proposed enactment.Mitchell v. Mobile County, 294 Ala. 130, 313 So.2d 172 (1975);Burns v. State, 246 Ala. 135, 19 So.2d 450 (1944); Gray v.Johnson, 235 Ala. 405, 179 So. 221 (1938). Any act assailed as unconstitutional under this section is presumed to be constitutional. Gray, supra. The requirements of 106 should receive a broad and liberal construction and avoid so strict a construction as would hamper and embarrass legislation. Wilkinsv. Woolf, 281 Ala. 693, 208 So.2d 74 (1968). *Page 119 
Following these guidelines, we do not think 106 mandates notice to persons who might be indirectly affected, however remotely, by enactment of a proposed local law. Creative minds can conceive of some collateral effect which would occur outside of the locality to which the law was intended to apply arising from most any locally applicable legislation. Ingenious arguments, however, cannot be permitted to so easily defeat the legislative process and thus its intended effect.
We opine that the requisites of 106 are satisfied by the giving of notice of a proposed local law to those who would beimmediately affected by its enactment: persons within the locality in which the law is intended to and by its very terms does, operate.
Act 689 does not purport to regulate activity in any phase of beer distribution outside of Jefferson County. Because notice was properly published in Jefferson County, we hold that Act 689 is a local law which was properly published according to the terms of 106 and falls within the exemption for local laws regulating the liquor traffic found in 104.
Having determined 104 to be applicable, it must be construed along with 105 in considering plaintiffs' challenge under the latter section. Each section of the Constitution must necessarily be considered in pari materia with all other sections. Opinion of the Justices, 333 So.2d 125 (Ala. 1976). Plaintiff urges that the decision in Peddycoart v. City ofBirmingham should guide our interpretation of these provisions of the Constitution. In Peddycoart, we observed that this court had in the past upheld local laws tested under 105 when it found a "substantial difference" between the local law and general law allegedly covering the same subject matter. After discussing the vagaries of this test, this court indicated that a more restrictive attitude was appropriate when considering interpretation of 105.
However, with respect to the special situation of a local law regulating the liquor traffic, which Peddycoart did not
address, the framers of the constitution granted express authority to enact local legislation. Furthermore, in so doing, those framers provided that "nothing in this section or article
shall affect the right of the legislature to enact local laws regulating or prohibiting the liquor traffic." (Emphasis ours.) We here note that both 104 and 105 fall under Article IV of the Constitution of 1901.
When there is a conflict, or apparent conflict, between sections of the Constitution, the more specific will prevail as against a more general statement pertaining to the same subject matter. State v. Stone, 237 Ala. 78, 185 So. 404 (1939). We therefore conclude that by virtue of the specific exemption for local liquor laws in Section 104, Act 689 is not unconstitutional under Section 105 as a local law regulating a subject subsumed by an extant general law.
Turning to the federal constitutional questions, the posture of our examination of these issues is set by observations of the United States Supreme Court, in Joseph E. Seagram Sons v.Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966):
 Consideration of any state law regulating intoxicating beverages must begin with the Twenty-first Amendment, the second section of which provides that: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." As this Court has consistently held, "That Amendment bestowed upon the states broad regulatory power over the liquor traffic within their territories."
The Twenty-First Amendment operates to fortify the intrinsic police power of the state to regulate liquor traffic, itself a broad and plenary power. California v. LaRue, 409 U.S. 109,93 S.Ct. 390, 34 L.Ed.2d 342 (1972).
Proceeding with this perspective, we consider plaintiffs' contention that Act 689 violates *Page 120 
guarantees of equal protection of the laws.
Any form of state legislation creating discriminating classifications (1) that concern fundamental constitutional rights, or (2) whose defining criteria are inherently suspect, or (3) that are unnecessarily restrictive and unreasonably related to the legislation's purported purpose, is subject to challenge and examination as a denial of equal protection of the laws. Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451,50 L.Ed.2d 397 (1977).
As regards the first two arms of this equal protection standard, the federal district court in Patch Enterprises, Inc.v. McCall, 447 F. Supp. 1075 (M.D.Fla. 1978), stated:
 It is an intrinsic power of state governments and their subdivisions, fortified by the federal Constitution's Twenty-first Amendment, to regulate the sale, distribution, importation, and use of alcohol intoxicants, so long as that regulation does not irrationally and invidiously discriminate. California v. LaRue, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342, 349-50 (1972); cf. Craig v. Boren, 429 U.S. at 204-05, 97 S.Ct. at 460-61, 50 L.Ed.2d at 411, 413-14, and 429 U.S. at 215, 97 S.Ct. at 466, 50 L.Ed.2d at 417-18 (Stewart, J., concurring in the judgment). There is, furthermore, no fundamental constitutional right of persons to sell or consume alcoholic beverages.
 Hence, the question presented by plaintiffs' equal protection challenge to the ordinance is whether its proscriptive and regulatory classification (1) has a legitimate governmental objective and (2) is a reasonable means to achieve that goal. Zablocki v. Redhail, 434 U.S. 374, 400, 401, 98 S.Ct. 673, 688, 689, 54 L.Ed.2d 618, 639, 640 (January 18, 1978) (Powell, J., concurring in the judgment); Craig v. Boren, 429 U.S. at 211, 97 S.Ct. at 464, 50 L.Ed.2d at 415 (Powell, J., concurring); Weber v. Aetna Casualty and Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777 (1972); Levy v. Louisiana, 391 U.S. 68, 71, 88 S.Ct. 1509, 1511, 20 L.Ed.2d 436, 439 (1968).
In considering this question in the context of a state's exercise of regulatory authority over intoxicating liquors under the police power and the Twenty-First Amendment, every analysis of the validity of such state regulatory action must proceed from the vantage point of "presumed state power".California v. LaRue, supra.
As stated earlier, defendants produced testimony at trial that Act 689 was enacted to prevent losses of tax revenue resulting from beer being brought into Jefferson County by retailers who purchased that beer from wholesalers in other areas of the state, and who also failed to report those purchases to Jefferson County tax officials. Defendants' testimony regarding the purpose of the act cannot, of course, be accepted, without question, as a statement of the legislative intent underlying the Act. However, the statutory purpose as advanced by defendants can be considered under the applicable test. That test is whether the statute in controversy regulating the liquor traffic is "arguably reasonable" under any state of facts. Allstate Beer, Inc. v.Julius Wile Sons Co., Inc., 479 F. Supp. 605 (N.D.Ga. 1979);McDonald v. Brewer, 295 F. Supp. 1135 (N.D.Ala. 1968).
In light of the heavy presumption of validity regarding regulatory liquor legislation, we hold that Act 689 is reasonably related to a legitimate state purpose and does not violate principles of equal protection.
Looking to plaintiffs' contentions regarding due process, the Commerce Clause, and antitrust laws, we observe that AllstateBeer, supra, addressed these very issues in construing a Georgia statute, the critical provisions of which were virtually identical to those of Act 689. The statute inAllstate required designation of territories and exclusive wholesalers for those territories; the only difference being that the Georgia statute regulated the distribution of wine rather than malt or brewed beverages. Additionally, the action in Allstate Beer was brought against state officials as was this *Page 121 
action, a factor which was significant in the court's decision.
We consider the analysis in Allstate Beer directly applicable to the case sub judice and therefore quote from that opinion at length:
 "[Plaintiff] first challenges the Georgia regulations as violative of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., and, thus, the Supremacy Clause of the U.S. Constitution, Art. VI, cl. 2. Because [plaintiff] does not charge that Allstate is acting in violation of the federal antitrust laws, but rather attacks the regulatory program itself, the counterclaim is actually in the nature of a suit against state officials who supervise the distribution of alcoholic beverages. . . .
 "This distinction is crucial in an antitrust case. In a line of cases beginning with Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) the Supreme Court has defined the parameters of the `state action' exemption to the federal antitrust laws. If the suit is against state officials individually for violating the antitrust laws in the administration of a certain state program, the Court has routinely held that the `state action' exemption applies. New Motor Vehicle Bd. of California v. Orrin W. Fox Co., 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361
(1978); Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 98 S.Ct. 2207, 2217-18, 57 L.Ed.2d 91 (1978); Bates v. State Bar of Arizona, 433 U.S. 350, 359-63, 97 S.Ct. 2691, [2696-2698] 53 L.Ed.2d 810 (1977); see also, City of LaFayette v. Louisiana Power Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364
(1978); cf. Cantor v. Detroit Edison Co., 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976); Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975); Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951). . . .
". . . .
 "In sum, the Georgia regulations fall within the "state action" exemption to the Sherman Act and, hence, are not violative of that act or the Supremacy Clause.
 "[Plaintiff] also contends that the Georgia regulatory scheme violates the Commerce Clause. Citing the Twenty-First Amendment, the Supreme Court made it clear that, `State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.' Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 330, 84 S.Ct. 1293, 1297, 12 L.Ed.2d 350 (1964).
". . . .
 "[P]laintiff next attacks the Georgia regulations as violative of the due process clauses of both the federal, U.S. Const., Art. XIV, and State, Ga. Code Ann. § 2-101, Constitutions. More specifically, the defendant says that the regulations unduly interfere with his right to enter into contracts and are, therefore, in conflict with substantive due process.
 "According to the Court of Appeals for the Fifth Circuit only a `clear showing' of arbitrariness would allow a court to substitute its judgment for that of the state legislature in the area of regulation of the alcoholic beverages industry. If the state's law is `arguably reasonable,' it should be sustained. Parks v. Allen, supra, [426 F.2d 610] at 613-14. See also, Trustees of Mortgage Trust of America v. Holland, 554 F.2d 237 (1977); Barnes v. Merritt, 428 F.2d 284, 288 (5th Cir. 1970)."
In discussing the equal protection question earlier in this opinion, we determined that Act 689 is reasonably related to a legitimate state purpose. We are in accord with the analysis and holding of Allstate Beer and deem that authority controlling with respect to plaintiffs' challenge that Act 689 violates federal due process guarantees, the Commerce Clause, and federal antitrust laws.
As to plaintiffs' claim that Act 689 violates equal protection and due process principles under the Alabama Constitution, the only Alabama case cited in support is Kinmonv. J.P. King Auction Company, Inc., *Page 122 290 Ala. 323, 276 So.2d 569 (1973), which does mention the constitutional right to contract, but was decided on contract principles having no application to this case. We consider our analysis of the equal protection and due process issues under the United States Constitution equally applicable to those same issues under the Alabama Constitution. This is particularly true in light of the pronouncements of this court regarding the extent of the police power exercisable by the Legislature when regulating the liquor traffic:
 The legislative power to regulate the sale of liquor is absolute. The legislature may regulate it as it sees fit, or prohibit it entirely. . . .
Ebony Club, Inc. v. State, 294 Ala. 421, 318 So.2d 282 (1975).
. . . The State may regulate the manner and circumstances under which the liquor traffic may be conducted and surround the right to pursue it with such conditions, restrictions and limitations as it deems proper, or prohibit it entirely. . . .
Armstrong v. State, 248 Ala. 124, 26 So.2d 874 (1946).
We find Act 689 of the Regular Session of the 1977 Alabama Legislature to be constitutional in all respects under both the state and federal constitutions. Accordingly, the judgment of the trial court is due to be and is hereby reversed and judgment here rendered dismissing this action and ordering that all costs be paid by plaintiffs below.
REVERSED AND RENDERED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, SHORES, BEATTY and ADAMS, JJ., concur.