**LANIERLAND DISTRIBUTORS, INC.,
et al., Plaintiffs,**

v.

**W. E. STRICKLAND, Revenue
Commissioner of the State of
Georgia, Defendant.**

Civ. A. No. C81–1745A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 9, 1982.

David A. Fox, Thompson, Fox & Hardman, Gainesville, Ga., for plaintiffs.

David A. Runnion, Asst. Atty. Gen., Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This action challenges the constitutionality of two Georgia Department of Revenue rules which relate to the granting of licenses to beer importers who desire to ship beer into Georgia. The plaintiffs seek a court order declaring the challenged rules unconstitutional, and requiring the defendant Revenue Commissioner of Georgia both to issue plaintiff McColl a shipper's license, and to allow plaintiff Lanierland to act as McColl's designated wholesale distributor for receiving beer in Georgia. Jurisdiction is predicated on 28 U.S.C. §§ 1331(a), 1343(3), and 2201. The case is before the court on the parties' cross-motions for summary judgment.

On a motion for summary judgment the moving party bears the burden of showing both the absence of a genuine issue as to any material fact, and that judgment is warranted as a matter of law. The evidence on the motion must be construed in favor of the party opposing the motion, and the opposing party must receive the benefit of all favorable inferences that can be drawn from the evidence. Applying these standards to the instant case, the court concludes, for the reasons set forth below, that the plaintiffs' motion for summary judgment must be denied, and the defendant's motion must be granted.

### I.

Georgia has established a three-tiered licensing and distribution scheme to govern the manufacture, importation, and sale of beer [1] within the state. On the first tier, no beer can be brought into, or brewed in, Georgia unless the beer brand has been "registered" with the state commissioner of revenue. Rules of Department of Revenue, Alcohol and Tobacco Tax Division § 560–8–2–.07 (Rev'd May 7, 1978) [hereafter cited as "Revenue Rules" § _____].[2] Permission to register is granted only upon a showing that specified criteria are met. Moreover, in order to facilitate the tracing of beer shipments along the length of distribution chain, a beer brand can only be registered by, or with, the brewer's permission. *Id.*

On the second tier, registered beer can only be sold to state-licensed wholesalers, who have been "designated" by the beer brand registrant as approved wholesalers for particular beers. Revenue Rules § 560–8–2–.12. On the third tier, the designated wholesalers may only sell their products to licensed retailers. Revenue Rules § 560–8–3–.05.

A central ingredient of the regulatory scheme is a requirement that beer shipped to or within Georgia in cans or bottles must have the word "Georgia" indented, embossed, or printed on the can or bottle top ("the 'Georgia' identification requirement"). This identification requirement applies to all domestically manufactured beer and any foreign beer sold in a volume exceeding 250 standard, 288 ounce cases per month.[3] 5A Ga.Code Ann. § 4502 (1981); Revenue Rules §§ 560–8–2–.08, 560–8–2–.09. In addition, the state has imposed record-keeping requirements as to the dates and volume of beer shipped and received at each level of distribution.

The three-tiered regulatory scheme has several goals. First, it facilitates a local prohibition option because county or municipal governments can refuse to issue retail

---

**1.** The applicable statutes and regulations speak of "alcoholic beverages" "malt beverages," "wine" and "distilled spirits." For convenience, since this case deals only with beer, the court will speak only of that beverage, even though the statutes and regulations use more general terms.

**2.** The Revenue Rules were revised and republished, effective May 25, 1982. The changes in the new rules are not relevant here.

**3.** Nothing in the Revenue Rules prevents the "Georgia" identification from being added after beer leaves the brewer. However, as a practical matter, to meet the identification requirement, both domestic and high volume foreign brewers who have registered their brands, keep a supply of "Georgia" marked bottles caps and can tops at their breweries to use when bottling a batch of beer destined for sale to designated Georgia wholesalers.

licenses. Second, it protects the public health and safety by limiting distribution of beer within the state, and by providing a means to insure that beer that is distributed, is of good quality. Third, through the record keeping and identification requirements, it provides a mechanism to enforce payment of state and local beer taxes. This third purpose is especially significant because Georgia's beer taxes, which are among the highest in the county, provide a substantial incentive for bootlegging, and the presence of several large military installations that import tax-free beer into the state, provide a ready source of beer for bootleggers to divert into the general Georgia market.

## II.

In February 1981, pursuant to Revenue Rule § 560–8–2–.01, plaintiff McColl applied for a Georgia Malt-Beverage Shipper's license to ship imported Coors brand beer to Georgia. The application named plaintiff Lanierland as McColl's designated wholesaler pursuant to Revenue Rule § 560–8–2–.02.

Coors brand beer is manufactured at a single brewery in Colorado. No artificial additives are used in the brewing process and, unlike most beer, Coors is unpasteurized. For these and other reasons, many beer drinkers perceive Coors as a unique product, and there is a nationwide demand for Coors beer. Despite this, Adolph Coors Company, brewer of Coors beer, desires to market its beer in only 20 states, most of which are west of the Mississippi River. Accordingly, Adolph Coors Company has not registered its beer for sale in Georgia.

Plaintiff McColl has arranged to purchase Coors beer in Texas, and to export that beer to Mexico. McColl then imports the beer back into the United States and trucks the beer back to states where it is licensed to sell beer. McColl asserts that it is a bona fide importer with its own beer brand, "imported Coors." Accordingly, McColl main-

tains that it should be permitted to register its brand for sale in Georgia even without brewer approval. McColl proposes to comply with the "Georgia" identification requirement by fixing stickers marked "Georgia" on each can or bottle of imported Coors sent to Georgia.

On March 4, 1981, McColl's application was denied by defendant Strickland. In his letter of denial he cited the fact that Adolph Coors Company, the brewer of Coors beer, had not registered its brands as required by Revenue Rule 560–8–2–.07, and that the plaintiffs did not indicate they would comply with the identification requirements of Revenue Rule 560–8–2–.08. *See* ¶ 8 Complaint.[4]

In July 1981, the plaintiffs filed suit, alleging that the brewer registration and "Georgia" identification requirements violate the commerce, due process, equal protection and contract clauses of the Constitution. The plaintiffs attack the Revenue Rules both on their face, and as applied. The plaintiffs also argue that Georgia's regulatory system aids in the establishment of vertical controls over distribution which violates the Sherman Antitrust Act.

## III.

The parties' cross-motions for summary judgment were submitted by the clerk on June 29, 1982. On July 1, 1982, the Supreme Court announced its decision in *Rice v. Norman Williams Company*, —— U.S. ——, 102 S.Ct. 3294, 73 L.Ed.2d —— (1982), a case involving a challenge to California's "designation statute." That statute provided that a "licensed importer [of distilled spirits into California] shall not accept delivery of any brand of distilled spirits unless he is designated as an authorized importer of such brand by the brand owner or his authorized agent." Cal.Bus. & Prof.Code § 23672 (West Supp.1982).

■ In *Rice*, the Supreme Court upheld the California designation statute against

---

**4.** Although the plaintiffs' initial brief referred to the letter of denial as an attached exhibit, no

such exhibit could be found by the court.

antitrust, equal protection and due process attacks. Applying traditional Constitution principles in light of *Rice*, it seems clear that the Georgia registration and identification regulations are not unconstitutional on their face on equal protection or due process grounds. Additionally, the plaintiff has failed to advance any arguments to show how the effects of the Georgia regulatory scheme violate the rule of reason standard which must be applied to an antitrust analysis in cases such as this. *Rice*, —— U.S. at ——, 102 S.Ct. at 3300.

Although *Rice* did not deal directly with Commerce Clause analysis, it implies that the plaintiffs' commerce clause attack is also without substance. Consideration of any commerce clause attack on a state law regulating intoxicating beverages must begin with the Twenty-First Amendment, the second section of which provides that: "The transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." Under this amendment a state is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders. *Seagram & Sons v. Hostetter*, 384 U.S. 35, 41–42 (1965). The purpose and requirements of the Revenue Rules as discussed above, are obviously within the ambit of Georgia's police power and do not offend the Commerce Clause. *See Seagram & Sons v. Hostetter, id.*

Although enacted in response to different problems, the Georgia Revenue Rules have substantially the same effects and engender the same objections as the California designation statute. While Georgia may prefer a short distribution chain in order to ease its monitoring task, the state does not actually require that the beer distribution chain be limited to brewer-wholesaler-retailer, with brokers or middlemen such as plaintiff McColl excluded. Rather, through the brand registration and "Georgia" identification requirements Georgia, as did California, gives brewers the sole power to determine if, and how, their products will get from the brewery to Georgia consumers. In turn, the state looks to the brewers as a source of information on beer shipments to facilitate state control of beer distribution. It is the transfer of power over the distribution chain to private parties that is the gravamen of the constitutional claims.

The plaintiffs' most prominent attacks on the constitutionality of the Georgia Revenue Rules were directed to equal protection concerns. The plaintiffs made persuasive arguments that pre-numbered, pre-paid tax identification stickers sold to Georgia importers would provide a method of monitoring alcoholic beverage distribution as reliable as the system established by the state, without providing brewers the power to limit distribution of their products after the products leave the brewery. By the same token, the court notes that the Georgia Revenue Rules do not provide a foolproof method of monitoring beer distribution in Georgia, since a brewer may create a long and difficult-to-verify distribution chain by transferring brand registration rights to a middleman, or may confound the purpose of the "Georgia" identification requirement by supplying "Georgia" bottle and can tops to non-Georgia wholesalers. Based on these points the plaintiffs argued that the Georgia Revenue Rules unjustifiably singled out middlemen and importers for disparate treatment.

The plaintiffs' equal protection claims fall under the familiar "rational basis" standard of review. Under this standard a "statute is not invalid under the Constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result it tends to produce." *Roschen v. Ward*, 279 U.S. 337, 339, 49 S.Ct. 336, 336, 73 L.Ed. 722 (1929). "[T]he reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). Moreover, the demands of the "rational basis" standard are minimal in challenges to legislation origi-

nating under the Twenty-First Amendment. *Parks v. Allen,* 426 F.2d 610, 613 (5th Cir. 1970).

 The Georgia Revenue Rules have an obvious rational relationship to Georgia's legitimate interests in regulating beer distribution within the state. The discrimination against distributors who have not secured brewer approval to distribute the brewer's products is not invidious, and cannot be second-guessed by this court.

### IV.

The plaintiffs' remaining arguments focus on the manner in which the Georgia Revenue Rules were applied. They maintain that even if the brewer registration and "Georgia" identification requirements are not unconstitutional on their face, Georgia was arbitrary and discriminatory in denying the plaintiffs' applications.

 It is beyond dispute that while the Twenty-First Amendment permits discrimination against imports of alcoholic beverages, the Amendment does not authorize a denial of equal protection or due process in the application process for permission to undertake whatever importation activity a state does allow. However, the plaintiffs have not shown that the Revenue Rules have been unfairly applied.

The plaintiffs' equal protection claim rests on the plaintiffs' assertions that Georgia has granted licenses to other beer importers even when the beer brewer has not registered. In the instances cited by the plaintiffs in which an importer was granted a license without brewer registration, the importer had been acting as the brewer's authorized agent, and presumably the brewer's cooperation with Georgia's regulatory scheme was insured. The Revenue Rules do not explicitly provide that a brewer may register under Rule 580-8-2-.07 through an agent. But Georgia is not under a Constitutional mandate to incorporate by reference into all its statutes and rules standard legal principles, such as agency law.

 If, *arguendo,* Georgia's application of Revenue Rule 580-8-2-.07 was improper,

the plaintiffs are still not entitled to licenses because they did not propose to comply with Revenue Rule 560-8-2-.08. Although the plaintiffs' Coors beer is "imported," it was domestically produced, and the use of "Georgia" stickers does not meet the identification requirement of Revenue Rule 560-8-2-.08.

 Finally, the plaintiffs raised, but did not detail the claim that they were denied due process because they were not afforded a hearing before their license applications were denied. Applicants for alcoholic beverage licenses are entitled to a hearing upon request. 5A Ga.Code Ann. § 502(b)(3). The plaintiffs never requested a hearing. Further, plaintiff McColl's application was invalid on its face since McColl did not propose to comply with Revenue Rule 560-8-2-.08. *See Crews v. Undercofler,* 371 F.2d 534 (5th Cir. 1967). The plaintiffs did not show any denial of due process in this case.

For the reasons set out above the plaintiffs' motion for summary judgment is DENIED and the defendant's motion is GRANTED.